UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


| HELEN F. SLOCUM | CIVIL ACTION |
|---|---|
| VERSUS | NO: 08-685 |
| GUARDSMARK, L.L.C. | SECTION: "A" (5) |

## ORDER AND REASONS

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 60)** filed by Defendant Guardsmark, L.L.C. ("Guardsmark"). The motion, set for hearing on September 16, 2009, is before the Court on the briefs without oral argument. For the reasons that follow, the motion is **GRANTED** and Plaintiff Helen F. Slocum's claims are **DISMISSED WITH PREJUDICE**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit concerns various employment-related claims by Plaintiff, Helen F. Slocum, against her former employer, Guardsmark. According to the Complaint, Slocum was hired as a security guard by Guardsmark in January of 2000. (Compl. ¶ 5). By the time Slocum left Guardsmark in September of 2007, she had been promoted to a supervisory role in the company (*Id.*). According to Slocum, multiple incidents occurred in 2007 regarding racial slurs used in

1

front of other Guardsmark employees, causing disciplinary action by Guardsmark against an employee who used slurs. (Response Memorandum of Plaintiff Helen F. Slocum in Opposition to Defendant's Motion for Summary Judgment at 2-4 (Dec. 15, 2008) ("First Opp.")). Slocum expressed concern to her supervisors at Guardsmark that the discipline meted out was insufficient. *(Id.)*. Upon returning to work from an approved medical leave in October 2007, Slocum alleges that Guardsmark failed to reinstate her work schedule and effectively fired her, which Guardsmark denies.[1] (Compl. at ¶¶ 7-8). In October 2007, Slocum filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Gaurdsmark discriminated against her on the basis of her race and subjected her to a hostile work environment, though no claims of retaliation are mentioned. (*Id.* at ¶ 6; *See* First MSJ, Exh. "F"). Specifically, Slocum's EEOC charge alleged that black employees were repeatedly subjected to racially motived "verbal assualt[s]." (*Id.* at ¶ 6).

Subsequently, Plaintiff filed suit on January 18, 2008 against Gaurdsmark alleging racial discrimination and hostile work environment under Title VII, 42 U.S.C. § 2000e, *et seq.*, as well as retaliation claims under federal law. (Compl. at ¶ 9). Plaintiff seeks damages for physical and mental injuries sustained as a result of the discrimination. (*Id.* at ¶ 12(b)).

Guardsmark first filed a motion for summary judgment on November 19, 2008. (*See* First MSJ). In light of that motion, this Court dismissed Slocum's Title VII retaliation claim for lack of subject matter jurisdiction, but allowed her hostile work environment claim to go

---

[1] Guardsmark contends that Slocum's name was absent from the schedule on her return because she was slated to attend a meeting with supervisors to update her on personnel and policy changes that occurred during her absence, and that she walked out of the meeting and left her employment voluntarily. (Memorandum in Support of Motion for Summary Judgment Regarding Claims of Helen F. Slocum by Defendant, Guardsmark L.L.C. at 2 (Nov. 19, 2008) ("First MSJ")).

forward. (Order at 5, *Helen F. Slocum v. Guardsmark*, No. 08-0685 (E.D. La. Dec. 31, 2008) ("Order"). In its second motion for summary judgment on Slocum's hostile work environment claim, Guardsmark argues that Slocum was not subject to unwelcome harassment, that the racial harassment that did occur involved other employees and therefore should carry little weight as to Slocum, that Guardsmark took appropriate remedial action with respect to that harassment, and that the harassment Slocum alleges to have experienced is insufficient to fall within the purview of Title VII's strictures. (*See generally* Memorandum in Support of Motion for Summary Judgment Regarding Claims of Helen F. Slocum by Defendant, Guardsmark, L.L.C. (Sept. 1, 2009) ("Second MSJ")). Slocum counters that a number of "relational" discriminatory events occurred, including the use of further racial slurs against other African American employees, the resignation of one of those African American employees allegedly induced by racial discrimination, and communication problems between Slocum and her supervisor, Thomas L. Baer. (Response Memorandum of Plaintiff Helen F. Slocum in Opposition to Defendant's Second Motion for Summary Judgment at 2-5 (September 30, 2009) ("Second Opp.")). Slocum also appears to argue that her own departure from Guardsmark was in fact a constructive termination. (Second Opp. at 8; Compl. at ¶¶ 7-8). Because Slocum's allegation of constructive termination is barred because it was not adequately raised in her EEOC charge, and because none of Slocum's remaining allegations are sufficient to support the finding of "harassment" as to Slocum that is an essential element of her prima facie claim for hostile work environment, Guardsmark's Summary Judgment Motion is **GRANTED** and Slocum's claims are **DISMISSED** with prejudice.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id., citing Anderson*, 477 U.S. at 248. The court must draw all justifiable inferences in favor of the non-moving party. *Id., citing Anderson*, 477 U.S. at 255. Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id., citing* Fed. R. Civ. Proc. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993), *citing Anderson*, 477 U.S. at 250.

## III. DISCUSSION

To survive summary judgment on a hostile work environment claim under 42 U.S.C. § 2000e, *et seq.*, Slocum must establish that a reasonable trier of fact could conclude that (1) she is a member of a protected class who (2) was subjected to unwelcome harassment that (3) affected a term or condition of her employment and that (4) her employer knew or should have known

about the harassment and failed to take prompt remedial action. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir. 2007); *Celestine v. Petroleus de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001).

In support of her hostile work environment claim, Slocum offers several pieces of evidence. First, that she was effectively fired and that this was a race-based decision. (Second Opp. at 8; Compl. ¶¶ 7-8). Second, that a Caucasian Guardsmark employee used the racial epithet "nigger" twice in April of 2007 while at work, once in reference to Slocum, in front of an African American employee. (Second Opp. at 2). Third, that she experienced communication problems with her manager, Mr. Baer. (*Id.* at 3). Fourth, that fellow African American employee Linda Couzan was subjected to further racial epithets and that such treatment forced her to resign. (*Id.*) Fifth, that Guardsmark did not permit Slocum to conduct site checks during her medical leave of absence. (Statement of Uncontested Material Facts by Plaintiff Helen F. Slocum in Support of Second Opp. at ¶ 3) ("Statement of Facts.").

This Court may not consider Slocum's departure from Guardsmark in evaluating her claim as it was neither mentioned in her EEOC charge, nor could one reasonably expect an EEOC investigation to examine the circumstances of her departure based on her EEOC charge. *McClain v. Lufkin Indus.*, 519 F.3d 264, 273 (5th Cir. 2008), *citing Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970) (employment discrimination claims cannot go forward unless they are included in an EEOC charge *or* if an EEOC investigation based on the relevant charge would encompass such claims). Slocum's allegations regarding Ms. Couzan are similarly barred. No reasonable factfinder could conclude that Slocum's remaining allegations were sufficient to constitute the "harassment" necessary to support her claim. As "harassment" is a

necessary element of Slocum's claim on which she bears the burden of proof (*Turner*, 476 F.3d at 347), her claim fails to pass summary judgment muster.

## A. *Slocum's Departure from Guardsmark*

Slocum argues that her departure from Guardsmark was a constructive termination. (Second Opp. at 8; Compl. at ¶¶ 7-8). Guardsmark counters that Slocum's departure was in fact a voluntary resignation. (First MSJ at 2). For purposes of the instant motion, this debate is academic because the Court cannot consider the circumstances of Slocum's departure in assessing her hostile work environment claim.

A plaintiff seeking redress through Title VII must first "exhaust [her] administrative remedies [by] filing an administrative charge with the EEOC." *McClain v. Lufkin Indus.*, 519 F.3d 264, 273 (5th Cir. 2008). "Only after administrative efforts terminate may the employee sue the employer in federal court." *Id.* Further, "[c]ourts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative proces and peremptorily substitute litigation for conciliation." *Id.* Nevertheless, the scope of EEOC exhaustion is not limited to the four corners of the EEOC charge, but also includes those incidents or potential claims that are "like or related to" the EEOC charge and that an EEOC investigation could be "reasonably [] expected" to encompass. *Id.*, citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d at 466 (5th Cir. 1970). This is because Title VII "was designed to protect the many who are unlettered and unschooled in the nuances of literary draftsmanship." *McClain*, 519 F.3d at 273, *citing Sanchez*, 431 F.2d at 465. When considering what an EEOC investigation growing out of a particular EEOC charge would reasonably encompass, the "crucial element" to consider is "the factual statement contained therein." *Manning v. Chevron*

*Chemical Co.*, 332 F.3d 874, 879 (5th Cir. 2003), *quoting Sanchez*, 431 F.2d at 462.

The factual description in Slocum's EEOC charge states "I was advised by a Black employee that her White counterpart subjected her to a racially hostile work environment when she used the word 'Nigger' twice in the workplace on April 11, 2007 and April 25, 2007. I have been employed by this company since January 2000." (First MSJ, Exh. "F"). This Court has previously ruled that it lacked subject matter jurisdiction over Slocum's retaliation claims because of its too attenuated connection to her EEOC charge. (Order at 5). That Slocum's claim for *retaliation* arising from her departure is barred, however, is not necessarily dispositive of whether the Court can consider her departure, among her other allegations, in weighing her claim for *discrimination*. The Court must therefore consider whether an EEOC investigation would reasonably encompass an inquiry into Slocum's departure from Guardsmark.

The use of two racial epithets in the workplace, the sort of occurrences that would give rise to a hostile work environment claim, are not "like or related to" circumstances that would attend termination of employment, which is the sort of factual scenario that would typically give rise to a retaliation claim. *See Gates v. Lyondell Petrochemical Co.*, 227 Fed. Appx. 409, 409 (5th Cir. 2007) (unpublished) ("Plaintiff's hostile environment and unequal pay claims could not be expected to grow out of her EEOC discrimination charge when she charged only her employer's discrete acts in terminating and failing to promote her, and made no mention of a hostile work environment or unequal pay."); *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 838-39 (8th Cir. 2002) (hostile work environment claim did not arise out of charges of discrete act of failure to promote based on age discrimination); *Green v. LSU Health Science Ctr.*, No. 07-1819, 2008 WL 4861995, at *3 (W.D. La. Nov. 10, 2008) (unpublished ) (barring plaintiff's

7

claims for racial harassment when a "fair reading" of her EEOC charge was that she "claim[ed] she was suspended without pay because of her race."); *Martin v. Kroger Co.*, 65 F. Supp. 2d 516, 537-38 (S.D. Tex. 1999), *aff'd* at 224 F.3d 765 (5th Cir. 2000) (unequal pay claim did not arise out of charges of racial and sexual discrimination). It is therefore unreasonable to expect an EEOC investigation, sparked by a charge complaining about the use of racial epithets in the workplace, to encompass an inquiry into the circumstances surrounding the complainant's departure from the allegedly offending firm. It is even *more* unreasonable to expect such an all-encompassing EEOC investigation based on a charge detailing unrelated events involving *third parties*. This Court therefore cannot consider the circumstances attendant on Slocum's departure from Guardsmark in evaluating her hostile work environment claim. *McClain*, 519 F.3d at 274, *quoting Sanchez*, 431 F.2d at 466 ("Since 1970, the caselaw has explained that 'the "scope" of the judicial complaint is limited to the "scope" of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'"); *see also Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2006).[2]

Slocum's allegations with respect to Ms. Couzan, who allegedly witnessed the use of pejorative comments concerning African Americans on four different occasions (Second Opp., Exh. "B," June 26, 2009 Deposition of Linda M. Couzan, pp. 143-165), are barred for the same reasons. Slocum's EEOC charge concerned incidents involving a different African American employee, Gwen Pruit, and is therefore not related to Ms. Couzan's alleged treatment. (Second

---

[2]In addition, Slocum has not proffered sufficient evidence to allow a reasonable trier of fact to find that her departure from Guardsmark was in fact a racially-motived constructive termination. (First Opp., Exh. "C," Affidavit of Helen F. Slocum ("I viewed the schedule [on my return] and noticed that I my (sic) printed name had been removed. From my experience as a supervisor, that meant I had been fired. . . . I was informed that there would be a meeting with Donna Smith and Tom Baer . . . [at the meeting] I told them that I had already been fired."). This is an independently sufficient reason to discard that allegation in considering Slocum's hostile work environment claim.

Opp. at 2).

### B. *Slocum's Remaining Allegations of Discrimination*

Absent constructive termination, Slocum's remaining allegations that could possibly support a finding of "harassment," are (1) that a Caucasian Guardsmark employee used the racial epithet "nigger" twice in April of 2007, once in reference to Slocum, in front of an African American employee (Second Opp. at 2); (2) that she experienced communication problems with her manager, Mr. Baer (*Id.* at 3); and (3), that Guardsmark did not permit Slocum to conduct site checks during her medical leave of absence. (Statement of Facts at ¶ 3). These incidents do not rise to an actionable level of "harassment."

In order for Slocum to prevail on her hostile work environment claim, she must demonstrate that she was subject to "harassment" as that term is defined by Title VII jurisprudence. *Turner v. Baylor Richardson Med. Ctr.*, 476 f.3d 337, 347 (5th Cir. 2007); *Celestine v. Petroleus de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001). In evaluating the "harassment" constituting a hostile work environment claim, courts consider "the totality of the circumstances including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Harvill v. Westward Commc'n*, 433 F.3d 428, 434 (5th Cir. 2005), *quoting Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). For harassment to affect a "term or condition . . . of employment" it must be "sufficiently severe or pervasive" to alter the conditions of employment and create an abusive working environment. *Watts v. Kroger Co.*, 170 F.3d 505, 509-10 (5th Cir. 1999). The "mere utterance of an . . . epithet which engenders offensive feelings is not enough," (*Harris*, 510 U.S. at 21), nor are "isolated incidents

(unless extremely serious)." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "Second-hand harassment, although relevant, is less objectionable than harassment directed at the plaintiff." *Johnson v. TCB Constr. Co.*, No. 08-60472, 2009 WL 1766519, at * 4 (5th Cir. June 23, 2009) (unreported; quotations and alteration omitted), *citing Moser v. Ind. Dep't of Corr.,* 406 F.3d 895, 903 (7th Cir. 2005).

Of Slocum's remaining allegations, the purported use of the term "nigger" is the most significant. Slocum alleges that this word was used twice by a Guardsmark employee in April of 2007 in front of another African American Guardsmark employee. (First MSJ, Exh. "F"). This term is surely highly objectionable, but such "isolated incidents" of its use are not actionable under Title VII. *Faragher*, 524 U.S. at 788; *see Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (holding that the utterance of the term "ghetto children" and several racially insensitive comments were insufficient to state a claim for hostile work environment); *see also Grant v. UOP, Inc.*, 972 F. Supp. 1042, 1047 (W.D. La. 1996) (four uses of the term "nigger" does not constitute "harassment" for Title VII purposes). Such harassment is due even less weight because it was experienced by Slocum second-hand. *Johnson*, 2009 WL 1766519, at * 4 (citation omitted). Even when considered *in toto*, her allegations do not sufficiently constitute "harassment."[3] *See McCray v. DPC Indus., Inc.*, 942 F. Supp. 288, 293 (E.D. Tx. 1996) (being called "black yankee" and "son" three to five times, having a racial joke told in one's presence, and being called "nigger" once does not "constitute a hostile work environment as a matter of

---

[3]This assumes that Slocum's communication problems and her inability to conduct site checks were the result of racial discrimination, despite Slocum's deposition testimony indicating the contrary. Slocum stated in her deposition that she never personally heard any acts of discrimination. (Second MSJ, Exh. "A," June 25, 2009 Deposition of Helen F. Slocum at 187). She also specifically stated in her deposition that she *did not* think that her communication problems with Mr. Baer were the result of racial hostility. (*Id.* at 268).

law."). Because Slocum has failed to prove that she was subject to the "harassment" that is a requisite part of her hostile work environment claim, no reasonable trier of fact could find in her favor.

IV.     **CONCLUSION**

This Court may not consider Slocum's allegations of constructive termination because they are insufficiently related to the claims of racial harassment found in her EEOC Charge. Slocum's remaining allegations do not, as a matter of law, rise to the level of "harassment" necessary to enable a reasonable trier of fact to find that she was subject to a hostile work environment.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 60)** is **GRANTED** and that Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

This 21st day of October 2009.

JAY C. ZAINEY

UNITED STATES DISTRICT JUDGE